IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **RODNEY T. PATTERSON, #130643,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 1:16-cv-0005 |
| ) | |
| **CORRECTIONS COPRATION OF AMERICA** ) | Chief Judge Sharp |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Plaintiff Rodney Patterson, a prisoner confined at South Central Correctional Center ("SCCC") in Clifton, Tennessee, filed this *pro se* action under 42 U.S.C. § 1983 against Corrections Corporation of America and thirteen other defendants, alleging that the conditions of his confinement violate his federal constitutional rights. The Court must first consider whether the plaintiff should be permitted to proceed *in forma pauperis*, without paying the full filing fee in advance. Answering that question in the affirmative, the Court must then review the complaint in accordance with the Prison Litigation Reform Act ("PLRA").

**I.      The Application to Proceed *In Forma Pauperis***

The plaintiff seeks to proceed in this action *in forma pauperis*. (ECF No. 2.) Under the PLRA, a prisoner may not bring a civil action as a pauper,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). In other words, a prisoner-plaintiff who falls within the scope of § 1915(g) because of three previous "strikes" must pay the entire filing fee (currently $400.00 for prisoners not granted pauper status) at the outset of the case. *Wilson v. Yaklich*, 148 F.3d 596, 603–04 (6th Cir. 1998).

The plaintiff here has filed three civil actions in this district that were subsequently dismissed for failure to state a claim for which relief could be granted.[1] Accordingly, the Court must determine whether

---

[1] *See Patterson v. Hall*, No. 3:11-cv-0884 (M.D. Tenn. Sept. 23, 2011) (ECF Nos. 4 and 5, Memorandum and Order dismissing action on initial review for failure to state a claim for which relief could be granted); *Patterson v. Gentry*, No. 3:11-cv-0885 (M.D. Tenn. June 26, 2012) (ECF No. 19, Order

the plaintiff adequately alleges that he is in imminent danger of serious physical injury.

The complaint primarily focuses on past events and injuries, but the plaintiff does allege that he suffered a broken big toe and other injuries in a fall that took place in September 2015, that he "has received no necessary treatment for the injuries sustained due to his fall," and that he "continues to experience great pain" in his leg and back as well as pain and numbness in his big toe. (ECF No. 1, at 7.) Among other relief, he demands that the Court issue an injunction requiring the defendants to provide treatment for the plaintiff's injuries. (*Id.* at 9.)

The imminent-danger exception is a pleading requirement subject to the ordinary principles of notice pleading. *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). Under this standard, the plaintiff must "allege[] facts from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that [he] was under an existing danger at the time he filed his complaint." *Id.* (internal quotation marks and citation omitted).

To support a finding of sufficiently imminent danger, "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Id.* (citing *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id.* (citations omitted). In an unpublished opinion, the Sixth Circuit has held that "[f]ailure to receive adequate treatment for potentially life-threatening illnesses . . . clearly constitutes 'imminent danger' under the [PLRA]." *Vandiver v. Vasbinder*, 416 F. App'x 560, 562–63 (6th Cir. 2011) (citing *Ibrahim v. District of Columbia*, 463 F.3d 3, 6–7 (D.C. Cir. 2006) (holding that "failure to provide adequate treatment for Hepatitis C, a chronic and potentially fatal disease, constitutes 'imminent danger'")). In a later, published opinion in a case filed by the same plaintiff, the court reaffirmed that "a plaintiff who alleges a danger of serious harm due to a failure to treat a chronic illness or condition satisfies the imminent-danger exception under § 1915(g)." *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d at 587. Other circuits have similarly held that failure to treat "serious medical needs" may satisfy the imminent-danger requirement. *See, e.g.*, *Partin v. Harmon*, 113 F. App'x 717, 718 (8th Cir. 2004) (finding that plaintiff's allegations were sufficient to meet imminent-danger exception where

---

granting motions to dismiss and dismissing action in its entirety for failure to state a claim for which relief could be granted); *Patterson v. Medical Dep't*, No. 3:11-cv-0789 (M.D. Tenn. July 6, 2012) (ECF No. 51, Order granting motions to dismissing and dismissing action in its entirety for failure to state a claim for which relief could be granted).

he alleged that he was denied treatment for treatment for tuberculosis, prostate cancer, and colon cancer; deprived of prosthetic support boots; denied medical care for an injured knee and ankle; and forced to work against medical restrictions).

Other courts have rejected a requirement that the district courts scrutinize the seriousness of the continuing injury before granting a three-striker leave to proceed *in forma pauperis*. For example, in *Ciarpaglini v. Saini*, 352 F.3d 328 (7th Cir. 2003), the plaintiff alleged imminent danger resulting from the defendants' wrongful discontinuation of his medication for attention deficit hyperactivity disorder and panic disorder. The court rejected the defendant's assertion that the plaintiff's claims were "not serious enough," stating:

> [Section] 1915(g) is not a vehicle for determining the merits of a claim. To follow the [defendant's] logic, a district court would not just need to determine whether a prisoner is alleging some type of ongoing or imminent harm. It would also need to fine-tune what is "serious enough" to qualify for the exception. Is being denied heart medication? What about a cholesterol-lowering drug? How frequently do beatings need to occur before they are serious? This would result in a complicated set of rules about what conditions are serious enough, all for a simple statutory provision governing when a prisoner must pay the filing fee for his claim. This is not required, and so we find that the district court erred in concluding that [the plaintiff's] complaint didn't meet the imminent danger exception.

*Id.* at 331. *Accord Chavis v. Chappius*, 618 F.3d 162, 169 (2nd Cir. 2010) ("[A]lthough the feared physical injury must be 'serious,' 'we should not make an overly detailed inquiry into whether the allegations qualify for the exception,' because § 1915(g) 'concerns only a threshold procedural question' . . . ." (quoting *Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007))).

Although the present case presents an extremely close call, the Court finds that the plaintiff's allegations that the defendants have refused any medical treatment for a diagnosed broken big toe and that the plaintiff has continuing severe pain and numbness in his toe as well as continuing leg and back pain adequately alleges facts supporting an inference that the plaintiff is in imminent danger of serious physical injury, for purposes of the threshold inquiry required by 28 U.S.C. § 1915(g). *Cf. Freeman v. Collins*, No. 2:08-cv-71, 2011 WL 1397594, at *6 (S.D. Ohio April 12, 2011) (holding that the failure to treat allegedly severe chronic pain may satisfy the imminent danger requirement under specific circumstances); *Perez v. Sullivan*, 2005 WL 3434395, at *2 (W.D. Wis. Dec. 13, 2005) (same).

The Court will therefore grant leave to proceed *in forma pauperis*.

## II. Initial Review of the Complaint

### A. Standard of Review

Under the PLRA, the Court must conduct an initial review of any civil complaint brought by a prisoner if it is filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), seeks relief from government entities or officials, 28 U.S.C. § 1915A, or challenges the prisoner's conditions of confinement, 42 U.S.C. § 1997e(c). Upon conducting this review, the Court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [the PLRA] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Nonetheless, in conducting the initial review, the Court must read the plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept the plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

### B. Factual Allegations

The plaintiff lists the following as defendants in the caption of the complaint and in the section titled "Parties": (1) Corrections Corporation of America ("CCA"); (2) Damon Hininger, Chief Executive Officer of CCA; (3) Jason Medlin, CCA Director of Operations; (4) Cherry Lindamood, Warden of SCCC; (5) Danny Dodd, SCCC Associate Warden; (6) Leigh Ann Staggs, Grievance Chairperson; (7) Brenda Pevahouse, Disciplinary Board Chairperson; (8) Daniel Harville, Senior Correctional Officer; (9) Dr. Robert Coble; and (10) Nurse Gay L. Harville.[2] (ECF No. 1, at 1, 2–3.) In the body of his complaint, the

---

[2] To differentiate between the two defendants whose last name is "Harville," the Court will refer to them by their full names.

plaintiff also indicates that he also intends to bring claims against four corrections officers whose first names the plaintiff does not know: Staggs,[3] Dickey, Kirk, and Massey. (*See id.* at 3, 4, 8.)

The plaintiff alleges that he has a "serious orthopedic condition" that requires him to walk with a cane. On September 6, 2015, the plaintiff was accused of tampering with the lock mechanism on his cell door and, as a result, was being escorted to the prison's High Security Area ("HSA") by several officers, including defendants Daniel Harville, C/O Staggs, Dickey, and Kirk. The plaintiff alleges that, during this process, defendant Harville intentionally shoved the plaintiff while he was handcuffed with his hands behind his back, causing him to fall on the concrete and to seriously injure his foot, leg, and back. The plaintiff states that Dickey, Kirk, and Massey "did nothing to intervene to prevent his injuries and Plaintiff believes these Defendants played a part of the act to assault Plaintiff." (*Id.* at 4.) The plaintiff was taken to the medical department where the nurse on duty provided Tylenol, ordered ice, and recommended that the plaintiff be placed on the x-ray list. The plaintiff was then taken to the HSA.

The plaintiff was later served with two disciplinary infractions: one for tampering with a security device and a second one for "creating a disturbance" based on the incident that culminated in his falling. (ECF No. 1, at 5.) He requested that he be allowed to call witnesses to a hearing on the infractions but was told that, if he insisted on calling witnesses, the hearing in his case would be put off for at least two weeks. He was also told that if he did not agree to plead guilty to the charges and accept the offer of five days of punitive segregation, his case would be continued and, if he was ultimately convicted, he would receive twenty days instead. The plaintiff states that upon advice and "the coercive nature of the disciplinary procedures," he was "forced" to plead guilty and to accept the five days of punitive segregation. (*Id.*)

The plaintiff alleges that defendant Brenda Pevahouse "failed to conduct [his] disciplinary proceedings in a meaningful manner that is consistent with T.D.O.C. policy # 507.01." (ECF No. 1, at 5.) The plaintiff attempted to file a grievance against defendant Pevahouse but received no reply to his grievance.

---

[3] Corrections Officer Staggs is apparently not the same person as Grievance Chairperson Leigh Ann Staggs, also named as a defendant. To differentiate between these defendants, the Court will refer to the former as "C/O Staggs" and the latter by her full name.

The plaintiff further alleges that he was taken to medical for an x-ray on September 9, 2015, at which time he learned that he had fractured his big toe. Afterwards, he was returned to his segregation cell. The plaintiff was not provided ice while he was in segregation, although it had been prescribed. In addition, he received "hardly any pain medication." (*Id.* at 6.)

After being released from segregation, the plaintiff was moved to a building that was the maximum distance away from the cafeteria and medical department, making it difficult for the plaintiff to reach these locations, and was not equipped with a shower that accommodated his disability and injuries. He sought medical treatment but was denied any medical treatment by Nurse Gay L. Harville. The plaintiff attempted to file a grievance related to the denial of medical care by Gay Harville.

The plaintiff alleges that defendant Dr. Robert Coble is responsible for arranging for specialized care outside the prison. The plaintiff wrote to Dr. Coble on numerous occasions, requesting treatment for the injuries sustained in the fall on September 6, 2015. Dr. Coble did not respond.

The plaintiff alleges that he has not received necessary treatment for injuries sustained during the fall and that he continues to experience severe pain as well as numbness in his big toe.

The plaintiff alleges that he "exhausted his administrative remedies with respect to all claims and all defendants," including by filing grievances and writing letters to the health administrator, to Warden Cherry Lindamood, Associate Warden Dodd, Director Jason Medlin, Deputy Commissioner Woodall, CEO Hininger, and Sgt. Leigh Ann Staggs. He alleges that these individuals failed to respond to any of the grievances. (*Id.* at 7.)

He also asserts that, "[d]ue to the willful and intentional, deliberate act(s) of defendants C.C.A., Damon Hininger, and Jason Medlin to save money, streamline operation[s], the defendants have created dangerous and uncontrolled conditions by enforcing a *de facto* policy and custom of allowing poorly trained officers and puts plaintiff at serious risk of being injured" and pursuant to which "Plaintiff is arbitrarily subject to harassment, retaliation and intimidation at the hands of [SCCC]." (*Id.* at 7–8.)

The plaintiff seeks to bring claims against defendants Daniel Harville, C/O Staggs, Kirk, Dickey, and Massey based on the alleged violation of his federal constitutional rights and state law in using physical force against him without provocation or in failing to prevent the misuse of force.

He sues defendants Associate Warden Dodd and Warden Lindamood based on their failure to take disciplinary action.

He sues defendant Pevahouse for failure to "provide a meaningful opportunity to be heard, compelling him to plead guilty with[out] evidence to support the charge, and providing inadequate procedures," in violation of his right to due process.

He sues Dr. Coble on the basis that his failure to provide a follow-up examination constituted deliberate indifference to the plaintiff's serious medical needs, in violation of the plaintiff's constitutional rights. The plaintiff states that defendant Gay Harville's failure to provide adequate medical care violated his rights under the Fourteenth Amendment and also constitutes the tort of negligence.

The plaintiff demands compensatory and punitive damages from each defendant as well as injunctive and declaratory relief.

**C.    Discussion**

The plaintiff seeks to bring suit under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

There is no dispute that the individuals sued, including the entity CCA and its employees, are "persons" acting under color of state law for purposes of a suit under § 1983, insofar as they were "performing the 'traditional state function' of operating a prison." *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (quoting *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993)). The question is whether the plaintiff has alleged facts that, if true, support a claim that each defendant participated in an action that violated the plaintiff's constitutional rights.

**1.    Defendants Gay Harville and Daniel Harville**

The allegations in the complaint clearly support claims under § 1983 against defendant Nurse

Gay Harville, based on her alleged deprivation of necessary medical care to the plaintiff. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment.").

Likewise, the complaint states a colorable claim against defendant Senior Corrections Officer Daniel Harville, based on the plaintiff's allegation that Officer Harville intentionally shoved the plaintiff while he was in a vulnerable position, causing him to fall and injure himself. *See Hudson v. McMillian*, 503 U.S. 1, 4 (1992) ("The use of excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury.").

The claims against these two defendants will, for purposes of the initial review, be permitted to proceed.

### 2. Defendant Dr. Robert Coble

The claim against Dr. Robert Coble presents a closer call. The plaintiff does not allege that he was actually examined by Dr. Coble or that Dr. Coble was personally involved in his care. Rather, the plaintiff alleges that he wrote letters and requests for an examination to Dr. Coble, who ignored his requests, thereby denying him necessary medical treatment. At this stage in the proceedings, the Court finds that the plaintiff's allegations, accepted as true for purposes of this initial review, give rise to a reasonable inference that Dr. Coble received and read the plaintiff's entreaties and deliberately refused to provide him with medical treatment or to direct that he receive further medical treatment by medical practitioners under his supervision. *See Estelle*, 429 U.S. at 103 ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met."). The Court will therefore permit the plaintiff to pursue his claims against Dr. Coble.

### 3. Defendants C/O Staggs, Kirk, Dickey and Massey

Regarding officers Staggs, Kirk, Dickey, and Massey, the plaintiff's claims are based solely on his speculation that these individuals could have foreseen and prevented Daniel Harville's allegedly unwarranted use of force against the plaintiff. The plaintiff does not allege that these individuals actually participated in the use of force.

It is well settled that a civil rights plaintiff must allege the personal involvement of a defendant to state a claim against him or her under 42 U.S.C. § 1983. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436

U.S. 658, 691–92 (1978) (Section 1983 liability cannot be based upon a theory of *respondeat superior*); *Taylor v. Mich. Dep't of Corrs.*, 69 F.3d 716, 727–28 (6th Cir. 1995) (plaintiff must allege facts showing that defendant participated, condoned, encouraged, or knowingly acquiesced in the alleged misconduct to establish liability). In addition, to show entitlement to relief, a plaintiff's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Because these defendants were not personally involved in the alleged use of force and the plaintiff's speculation that they might have prevented the use of force is not sufficient to show that the plaintiff is entitled to relief, the claims against these defendants will be dismissed for failure to state a claim for which relief may be granted.

### 4. CCA, Hininger, Medlin, Lindamood, Dodd, and Leigh Ann Staggs

The plaintiff's claims against CCA, Hininger, and Medlin appear to be based primarily upon the plaintiff's assertion that these defendants enforced a policy and custom of allowing poorly trained officers to put the plaintiff at risk of being injured and harassed. The plaintiff does not provide any factual support for this assertion, however. He does not identify the policy or show how defendant Daniel Harville's allegedly intentional assault was the result of poor training. Because the plaintiff's allegations about an allegedly unconstitutional policy appear to be based upon rank speculation and because, even if true, such allegations do not show a causal connection between the failure to train and the plaintiff's alleged injury, the complaint fails to state a claim against these defendants based upon a purported failure to train. *Cf. Rizzo v. Good*, 423 U.S. 362, 371 (1976) (reversing the lower court's grant of injunctive relief against Philadelphia city and police department officials because the plaintiffs had failed to show an "affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by petitioners—express or otherwise—showing their authorization or approval of such misconduct"); *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982) (a supervisory official's failure to train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.").

The plaintiff also asserts claims against Hininger and Medlin, as well as Lindamood, Dodd, and Leigh Ann Staggs, based upon all of these individuals' failure to respond to the plaintiff's numerous grievances and/or failure to take disciplinary action against the individuals who were the subject of the plaintiff's grievances. The failure to take a disciplinary action against a third party does not constitute a violation of the plaintiff's constitutional rights for purposes of a claim under 42 U.S.C. § 1983. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act." (citation and internal quotation marks omitted)). Likewise, the mere fact that these defendants had supervisory responsibility over the other defendants does not establish a basis for the plaintiff's claims, because there is no *respondeat superior* liability under § 1983. *Id.* And the Sixth Circuit has repeatedly held that there is no constitutionally protected right to an effective prison grievance process. *See, e.g.*, *Walker v. Mich. Dep't of Corrs.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002). Consequently, the defendants' failure to process or respond to the plaintiff's grievances did not deprive him of a constitutionally protected interest.

### 5. Defendant Pevahouse

Finally, with respect to defendant Brenda Pevahouse, Disciplinary Board Chairperson, the plaintiff alleges that his right to due process during the disciplinary proceeding against him was violated because he was denied the right to call witnesses and effectively coerced into pleading guilty to a disciplinary infraction, for which he served five days in punitive segregation. The plaintiff alleges that the disciplinary proceedings were not conducted in accordance with TDOC policy. Among other forms of relief for the alleged violation of his due-process rights, the plaintiff seeks the expungement of his disciplinary conviction from his institutional record as well as damages, but he does not allege that the disciplinary infraction affected the overall duration of his confinement.

The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). In the absence of a protected liberty or property interest, "there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007).

The plaintiff does not specifically identify what liberty interest was violated, but the Court liberally construes the complaint as asserting that the plaintiff has a liberty interest under the Fourteenth Amendment in not being found guilty of a disciplinary infraction without being permitted to call witnesses in his favor and a liberty interest conferred by the state in prison officials' complying with TDOC policy and procedure governing the conduct of prison disciplinary proceedings before subjecting him to punishment in the form of segregation.

Generally speaking, however, the plaintiff has no free-standing liberty interest under the Due Process Clause in being free from action taken "within the sentence imposed." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (citation omitted), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Supreme Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause: A prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). The plaintiff here does not allege that the disciplinary action taken against him had any effect on the duration of his sentence. Rather, the punishment imposed upon him was five days in punitive segregation. [4]

The Court has held that confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt*, 459 U.S. at 468. Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 793 (6th. Cir. 2008). In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative

---

[4] Because the length of the plaintiff's actual sentence was unaffected by his disciplinary conviction, the allegations do not implicate the rule in *Muhammad v. Close*, 540 U.S. 749, 754–55 (2004), and *Edwards v. Balisok*, 520 U.S. 641, 648 (1997), which requires a favorable termination of disciplinary proceedings as a prerequisite to bringing a § 1983 claim, but only where the duration of a prisoner's confinement is affected.

segregation, or confinement in punitive segregation for a relatively short period of time, does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). Although societal and judicial attitudes toward segregation are continuing to evolve, the length of the stay in this instance—five days—was not atypical and significant and, therefore, does not give rise to a liberty interest protected by the Fourteenth Amendment.

Moreover, the defendants' alleged failure to comply with the prison's administrative rule or policy does not itself rise to the level of a constitutional violation. *See Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007) ("Allegations of state law or state constitutional violations will not support a § 1983 claim."); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001) ("Violation of a state's formal procedure, however, does not in and of itself implicate constitutional due process concerns." (citations omitted)).

In sum, the plaintiff's allegations that the defendant refused to allow him to call witnesses to testify on his behalf, coerced him to plead guilty, and refused to comply with TDOC policies before sentencing him to five days of punitive segregation, even if presumed to be true, are not sufficient in this case to state a § 1983 claim based on the deprivation of due process. The claims against defendant Pevahouse must therefore also be dismissed.

## III. Conclusion

For the reasons set forth herein, the Court will grant the plaintiff's application to proceed without prepaying fees and costs.

Upon initial review of the complaint, the Court will dismiss the claims against defendants CCA, Damon Hininger, Jason Medlin, Cherry Lindamood, Danny Dodd, Leigh Ann Staggs, Brenda Pevahouse, and Corrections Officers Staggs, Dickey, Kirk, and Massey.

Further, however, the Court will permit the claims against defendants Daniel Harville, Gay Harville, and Dr. Robert Coble to proceed.

An appropriate order is filed herewith.

KEVIN H. SHARP
Chief Judge
United States District Court